# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE


Josephine Amatucci

    v.                                     Civil No. 12-cv-448-SM

Robert Varney[1]


## REPORT AND RECOMMENDATION


In her complaint (doc. no. 1) and the addenda thereto (doc. nos. 4, 5, and 13),[2] Josephine Amatucci claims that Judge Robert Varney is liable to her under various legal theories for actions he took while presiding over her arraignment in the District Court for Southern Carroll County ("district court"), and for

---

[1] Amatucci initially sued three other defendants, Charles Hamilton, Brian Black, and the Town of Wolfeboro. She has since filed a notice of voluntary dismissal as to Hamilton and Black, stating that "this lawsuit only includes one defendant, District Court Judge Robert Varney." Doc. no. 8, at 1. Thus, I construe the notice of dismissal as applying to the Town of Wolfeboro.

[2] Those addenda include: (1) an amendment (doc. no. 4); (2) a motion to amend (doc. no. 5); and (3) a motion for the court to take notice (doc. no. 13). Because those filings allege facts or offer clarifications of Amatucci's complaint, I consider them to be part of the complaint for all purposes. To the extent that the motion to take notice requires a ruling by the court, I recommend that it be granted, with the proviso that such a disposition means only that I am permitted to consider that document as part of my preliminary review.

presiding over her arraignment in the first instance, after her
arrest in December of 2003.  The matter is before me for
preliminary review.  See 28 U.S.C. § 1915A(a); LR 4.3(d)(1)(B).
Also before me for a report and recommendation are: (1)
Amatucci's motion to amend (doc. no. 5); (2) Varney's motion to
dismiss for lack of proper service (doc. no. 6); (3) Amatucci's
motion to compel (doc. no. 9); and (4) Varney's motion to strike
Amatucci's motion to compel (doc. no. 10).  I begin by
recommending that the motion to amend be granted, and then turn
to my preliminary review.  Because I recommend dismissal of
Amatucci's complaint, based upon the doctrines of res judicata
and judicial immunity, I also recommend that the motion to
dismiss, the motion to compel, and the motion to strike all be
denied as moot.

### Motion to Amend

Amatucci begins her motion to amend by asking the court "to
take notice that this new cause of action has nothing to do with
[her] 2002 arrest," Mot. to Amend (doc. no. 5) 1, and then she
explains that her claims in this case are "based [exclusively]
on the new 'FACT' that the no-contact order [she was charged
with violating in 2003] was not a criminal stalking order issued

under RSA [N.H. Rev. Stat. Ann. §] 663:3-a[3] [sic] and the 'FACT' that the 2003 arrest was a warrantless arrest," id.  She devotes the remainder of her motion to arguing that her claims against Varney are not barred by res judicata.  I recommend that Amatucci's motion to amend be granted.  See Fed. R. Civ. P. 15(a).

## Preliminary Review

A. The Legal Standard

The magistrate judge conducts a preliminary review of complaints filed pro se and in forma pauperis before defendants are asked to respond to them.  See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(1)(B).  He or she may direct service of the complaint, or, as appropriate, recommend that the district judge dismiss one or more of the plaintiff's claims if, among other things, the complaint fails to state a claim upon which relief may be

_____

[3] While Amatucci characterizes as "new" the fact that the 2003 no-contact order was not issued under RSA 633:3-a, III-a, that fact was central to her most recent suit in this court. See Amatucci v. Hamilton, No. 11-cv-512-SM, 2012 WL 1964550, at *2 (D.N.H. May 18, 2012) (quoting Judge O'Neill's 2011 order describing his 2003 order).  Moreover, while Amatucci appears to characterize orders issued under RSA 633:3-a, III-a as "criminal stalking orders," that statute actually provides that "[a] person who has been the victim of stalking as defined in this section may seek relief by filing a civil petition in the district court or the superior court . . ." (emphasis added). Thus, it is not at all clear that there is any such thing as a "criminal stalking order" under New Hampshire law.

granted or a defendant is immune from the relief sought.  See 28
U.S.C. § 1915(e)(2); LR 4.3(d)(1)(B).

## B. Background

This case arises out of Amatucci's arrest in December of
2003 and her arraignment in the district court.  Amatucci has
litigated several claims in this court based on those events,
and the factual background for the claims in this case may be
found in the orders that have been issued in Amatucci's previous
cases.  See Amatucci v. Bolduc, No. 06-CV-225-JD, 2006 WL
3065502 (D.N.H. Oct. 27, 2006); Amatucci v. Hamilton, No. 05-cv-
259-SM, 2007 WL 1825177 (D.N.H. June 25, 2007) ("Amatucci II");
Amatucci v. Hamilton, No. 11-cv-512-SM, 2012 WL 1964550 (D.N.H.
May 18, 2012) ("Amatucci III"); see also Amatucci v. Hamilton,
No. 05-cv-259-SM, 2007 WL 2993824 (D.N.H. Oct. 11, 2007)
(awarding costs and fees to defendants, based upon Amatucci's
frivolous litigation).[4]

For purposes of this report and recommendation, the
following synopsis of the relevant facts will suffice.  During
the summer of 2003, Amatucci and her neighbor, Pauline Maloney,
filed stalking petitions against each other in the district

---

[4] Amatucci has also litigated claims arising from her 2003
arrest and prosecution in the Carroll County Superior Court at
least twice, in No. 2008-C-117 (Amatucci v. Hamilton) and in No.
212-2011-CV-249 (Amatucci v. Hamilton, et al.).

court.  Varney responded by issuing an order that provided, in

pertinent part:

> The issue of title to and extent of a right of
> way has been raised by Josephine Amatucci, defendant
> in 03-cv-91 and plaintiff in 03-cv-92.  Since the
> question of title [to] and extent [of] an interest in
> real estate has been raised and appears likely to be
> material to this dispute the Court directs that both
> complaints be transferred to the Carroll County
> Superior Court . . . .

In the superior court, Judge O'Neill held a hearing during which

the parties agreed to have no contact with each other, or with

members of each other's families.  Judge O'Neill memorialized

that agreement in an order he issued the day of the hearing.

His order provided: "[T]he parties are enjoined from having <u>any</u>

contact or communication with the other respective party by <u>any</u>

means or with that parties' relatives or members of that

parties' household.  This Order shall remain in effect pending

further Order of the Court." (Emphasis in the original.)  With

regard to the property-related issues that led Varney to

transfer the stalking petitions to the superior court, which

Judge O'Neill identified as "parking and/or the property rights

of the respective parties to the disputed area on Route 109,"

Judge O'Neill made no findings, because he did "not have before

[him] sufficient equity pleadings to determine this

question(s)."

The day after the hearing before Judge O'Neill, Amatucci sent a letter to Maloney's brother, Norman Bolduc.  After Bolduc received Amatucci's letter, he and Maloney went to the Wolfeboro Police Department ("WPD") to complain about it.  Patrolman James O'Brien of the WPD applied for an arrest warrant and submitted a supporting affidavit to the district court.  Varney signed both the affidavit and a complaint that charged Amatucci with "the offense of Violation of Protective Order contrary to RSA 173-B:9."[5]  The complaint also recited that Amatucci

> did knowingly violate a stalking order issued by Judge
> James O'Neil [sic] on November 12, 2003, by writing a
> letter to Norman Bolduc on November 13, 2003, knowing
> she was enjoined from having any contact by any means
> to all members of the Maloney family, [of] which
> Bolduc is a member.

Amatucci was arrested, and Varney presided over her arraignment. Her prosecution concluded when the charges against her were dismissed.

In August of 2011, in response to Amatucci's motion for clarification in the case that resulted in his 2003 order, Judge O'Neill issued another order stating that his 2003 order did not have the finite term of stalking orders issued under RSA chapter

---

[5] He signed the affidavit in his capacity as "Justice of the District Court for Southern Carroll County or Justice of the Peace."  He signed the complaint as "Justice of the Peace."

173-B and RSA 633:3-a, and that his 2003 order was "by definition [a] Restraining Order[ ] in Equity."

In August of 2012, in the Ossipee District of the Third Circuit of the New Hampshire Circuit Court ("district division"),[6] Amatucci filed a pleading in her 2003 criminal case titled "Motion to Set Aside Void Judgment." This was her argument:

> The gist of this motion to set aside the void judgments of district court judge Robert Varney, is that the judge knew without a doubt that he did not have subject matter jurisdiction to hear the case, as only the Superior Court has jurisdiction over equity matters. Yet Judge Robert Varney issued a warrant for Plaintiff's arrest, when he had no jurisdiction to hear the case, and he had no authority to issue a warrant for the arrest and incarceration and prosecution of Plaintiff for an alleged violation of a civil (mutual) restraining order in equity between two neighbors regarding property rights. Which was between private rights and did not involve the public, and therefore, not a criminal act, and where the DUE PROCESS OF THE LAW was the procedure that if there was a violation of a civil (mutual) restraining order in equity between two neighbors, the procedure would be through the Contempt of Court process, where the victim of the violation goes before the court who issued the order and the Court summons the defendant to appear in court and show cause. Therefore, Judge Robert Varney denied Plaintiff her Due Process of the Law, he did not have subject matter jurisdiction to hear the case, and a warrant should never have issued for a violation of a civil restraining order in equity. And therefore, his judgment is void [and] of no legal force. And it is mandatory that this court set aside this judgment issued in 2003.

---

[6] That court is the successor of the District Court for Southern Carroll County. See RSA 490-F:4 (Supp. 2012); RSA 502-A:1, XI (Supp. 2012).

Varney ruled as follows: "The undersigned rendered no 'judgment' in this matter.  This motion is accordingly denied."  In October of 2012, Amatucci asked the district division for a copy of the arrest warrant in her 2003 criminal case.  The deputy clerk informed her, by letter, that the court was unable to locate an arrest warrant in her case file.

Shortly thereafter, Amatucci filed this action.  In it, she alleges that Varney: (1) presided over her arraignment without subject-matter jurisdiction to do so; (2) ordered her to post a bond; (3) ordered her to keep herself at a distance from Norman Bolduc; and (4) fraudulently concealed (or conspired to fraudulently conceal) the true nature of Judge O'Neill's 2003 order from her.  Based upon those factual allegations, Amatucci claims that Varney violated her constitutional rights and participated in a conspiracy with several WPD officers to kidnap her and to commit various torts against her.

### C. Discussion

Amatucci's claims against Varney are barred by the doctrine of res judicata, and even if they were not, Varney is entitled to judicial immunity, which also entitles him to dismissal of Amatucci's claims.

### 1. Res Judicata

As I explained in my report and recommendation in Amatucci's most recent case in this court, "res judicata is an affirmative defense, [but] to avoid judicial waste, a court may dismiss an action <u>sua sponte</u> when a plaintiff is clearly precluded from relitigating claims that either were, or could have been, litigated in a prior action." <u>Amatucci III</u>, 2012 WL 1964550, at *6 (citing <u>Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)</u>, 324 F.3d 12, 16 (1st Cir. 2003); <u>Bezanson v. Bayside Enters., Inc. (In re Medomak Canning)</u>, 922 F.2d 895, 904 (1st Cir. 1990)). "The doctrine of res judicata dictates that 'a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action.'" <u>Haag v. Shulman</u>, 683 F.3d 26, 30 (1st Cir. 2012) (quoting <u>Haag v. United States</u>, 589 F.3d 43, 45 (1st Cir. 2009)). "Res judicata commonly attaches if three requirements are discernibly present: '(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits.'" <u>Haag</u>, 683 F.3d at 30 (quoting <u>Havercombe v. Dep't of Educ.</u>, 250 F.3d 1, 3 (1st Cir. 2001); citing <u>Kale v. Combined Ins. Co. of Am.</u>, 924 F.2d 1161, 1166 (1st Cir. 1991)).

Amatucci sued Varney in this court in 2005, claiming that he "act[ed] outside of his judicial capacity by advising the prosecuting authority [in her 2003 prosecution] that they would have to prove a particular definition of 'family' in order to successfully prosecute Amatucci." Amatucci v. Hamilton, No. 05-cv-529-SM, slip op. at 17 (D.N.H. Jan. 20, 2006). Magistrate Judge Muirhead recommended that the claim against Varney be dismissed on grounds of judicial immunity. See id. Judge McAuliffe approved Magistrate Judge Muirhead's report and recommendation and dismissed the claim against Varney. See Amatucci v. Hamilton, No. 05-cv-259-SM, slip op. at 1 (D.N.H. Mar. 7, 2006).

Based upon the foregoing, all three requirements for res judicata are present in this case. As to the first requirement, Judge McAuliffe's dismissal of Amatucci's claim against Varney in No. 05-cv-259-SM was a final judgment on the merits. As to the third requirement, Amatucci sued Varney both in No. 05-cv-529-SM and in this case. Regarding the second element, identity of the causes of action in the earlier and later suits, the court of appeals has explained:

> In considering whether the causes of action in two suits are sufficiently related to support claim preclusion [i.e., res judicata], we apply a "transactional approach." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998). The transactional approach does not focus

10

on the labels or sources for the plaintiff's causes of
action but instead considers whether the underlying
factual bases for the causes "are related in time,
space, origin or motivation . . . ." <u>Airframe [Sys.,
Inc. v. Raytheon Co.]</u>, 601 F.3d [9,] 15 [(1st Cir.
2010)] (internal quotation marks and citation
omitted).  In other words, we will find the required
relationship "'if both sets of claims-those asserted
in the earlier action and those asserted in the
subsequent action-derive from a common nucleus of
operative facts.'" <u>Breneman v. U.S. ex rel. F.A.A.</u>,
381 F.3d 33, 38 (1st Cir. 2004) (quoting <u>Gonzalez v.
Banco Cent. Corp.</u>, 27 F.3d 751, 755 (1st Cir. 1994)).

<u>Silva v. City of New Bedford</u>, 660 F.3d 76, 79 (1st Cir. 2011).

In No. 05-cv-259-SM, Amatucci claimed that Varney improperly

advised the prosecutor during the course of her arraignment.  In

this case, she challenges Varney's legal authority to preside

over her arraignment and several of the orders he issued during

that proceeding.  Plainly, her claims in the two cases derive

from a common nucleus of operative facts, i.e., Varney's

participation in her arraignment.  Any challenge to Varney's

jurisdiction over her criminal case could have been raised, and

should have been raised, in her previous suit against him.

Thus, the third requirement for res judicata is also present.

Amatucci's arguments against the application of res

judicata, articulated primarily in her motion to amend (doc. no.

5), are unavailing.  Her belated "discovery" of the true nature

of Judge O'Neill's 2003 order is not a factual transaction for

purposes of res judicata as it does not involve any conduct by

Varney, much less conduct independent of his participation in her arraignment.  Moreover, to whatever extent Amatucci contends that the true nature of Judge O'Neill's 2003 order had been fraudulently concealed from her by Varney or anyone else, that argument goes nowhere given that it is undisputed that Amatucci received a copy of Judge O'Neill's order upon its issuance. Amatucci's possession of that order put her in as good a position as anyone else to ascertain its true nature and made it legally impossible for anyone to fraudulently conceal its meaning from her.  Finally, Amatucci's second new "factual transaction," the alleged lack of a warrant for her 2003 arrest, has no bearing on her claim against Varney; she accuses him of malfeasance during her arraignment, but does not tie any of his alleged misconduct to the lack of an arrest warrant.

To conclude, all the requirements for res judicata are discernibly present in this case.  Therefore, Amatucci cannot state an actionable claim against Varney.  Accordingly, I recommend dismissal of Amatucci's claims against him.  See 28 U.S.C. § 1915(e)(2); see also LR 4.3(d)(1)(B).

### 2. Judicial Immunity

The doctrine of judicial immunity provides a second basis for dismissing Amatucci's claims against Varney.  At all times relevant to Amatucci's claims, Varney was serving as a district-

court judge.  All the acts Amatucci complains of were undertaken by him in his judicial capacity.  Therefore, Varney is immune from Amatucci's claims.

As the United States Supreme Court has explained, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335 (1872)."  Pierson v. Ray, 386 U.S. 547, 554 (1967) (parallel citation omitted).

> Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial.  Pierson v. Ray, 386 U.S., at 554 ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly").  See also Harlow v. Fitzgerald, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity).

> Rather, our cases make clear that the immunity is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Forrester v. White, 484 U.S., at 227-229; Stump v. Sparkman, 435 U.S. [349,] 360 [(1978)].  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.  Id., at 356-357; Bradley v. Fisher, 13 Wall., at 351.

<u>Mireles v. Waco</u>, 502 U.S. 9, 11-12 (1991) (parallel citations omitted.

With regard to the second circumstance that strips a judge of immunity, which is the one at issue here, the Supreme Court has explained "that the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him."  <u>Stump</u>, 435 U.S. at 356.  The Court continued:

> Because "some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ," <u>Bradley</u>,[13 Wall.] at 352, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge.  A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."  13 Wall., at 351.

<u>Stump</u>, 435 U.S. at 356-57 (footnote omitted).  The Court elaborated in a footnote:

> In <u>Bradley</u>, the Court illustrated the distinction between lack of jurisdiction and excess of juris-diction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in

14

> excess of his jurisdiction and would be immune.  [13
> Wall.] at 352.

Stump, 435 U.S. at 357 n.7

Here, in Amatucci's notice of voluntary dismissal, she
identifies "lack [of] subject matter jurisdiction, as [the]
first and foremost claim in this lawsuit."  Pl.'s Notice of
Dismissal (doc. no. 8) 1.  Her argument regarding subject-matter
jurisdiction in her 2003 criminal prosecution goes like this:
(1) the order she was charged with violating was a restraining
order in equity rather than a stalking order issued under RSA
633:3-a, III-a; (2) district courts in New Hampshire lack equity
jurisdiction; and (3) because district courts lack equity
jurisdiction, Varney, as a district-court judge, lacked subject-
matter jurisdiction over her prosecution and was, therefore,
without jurisdiction to preside over her arraignment.  Amatucci
further contends that Varney knew that he lacked jurisdiction
over her because: (1) he himself had transferred to the superior
court the stalking petitions that gave rise to Judge O'Neill's
order, due to his concern that they involved an equitable
matter, i.e., rights to real property; and (2) he reviewed Judge
O'Neill's order and her NCIC report at her arraignment, both of
which revealed that she was not subject to a stalking order
issued under RSA 633:3-a, III-a.

It is true that district courts in New Hampshire lack equity jurisdiction.  See Woodstock Soapstone Co. v. Carleton, 133 N.H. 809, 816 (1991) (citing 5 Richard Wiebusch, New Hampshire Practice, Civil Practice and Procedure § 2041, at 491 (1984)); cf. RSA 498:5-a ("An action may be brought in the superior court by any person claiming title to, or any interest in, real estate . . . against any person who may claim to own the same . . . for the purpose of determining such adverse . . . interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the same . . . .").  The district court's lack of equity jurisdiction, however, did not divest Varney of subject-matter jurisdiction over Amatucci's arraignment on a misdemeanor charge.

The criminal complaint against Amatucci charged her with violating RSA 173-B:9.  Because "[a]ll district courts shall have concurrent jurisdiction with the superior court over all proceedings under this chapter," RSA 173-B:2, I, Varney did not "act in the complete absence of all jurisdiction," Mireles, 502 U.S. at 12, when he presided over Amatucci's arraignment.  To the contrary, given the grant of jurisdiction in RSA 173-B:2, I, Varney had subject-matter jurisdiction over the case.

The arraignment over which Varney presided was not a continuation of the civil case he transferred to the superior

16

court; it was part of a whole new criminal case, albeit one based upon a violation of an order in a civil case. That a person may be criminally prosecuted for violating a no-contact order resulting from a civil petition is borne out by the plain language of RSA 633:3-a, III-a, and a person's exposure to criminal liability for violating a no-contact order other than one issued under RSA 633:3-a, III-a, is beyond dispute, see RSA 173-B:9, III (making it a class A misdemeanor to violate a protective order issued under RSA ch. 173-B or RSA 458:16, III); RSA 633:3-a, I(c) (defining the offense of stalking to include making contact with a person when contact is prohibited by "a protective order pursuant to RSA 173-B, RSA 458:16, or paragraph III-a of this section, or an order pursuant to RSA 597:2 that prohibits contact with a specific individual").

In short, Varney is entitled to absolute judicial immunity from Amatucci's claims in this case. His immunity, in turn, provides a second basis for recommending dismissal of Amatucci's claims against him.

## Conclusion

For the reasons detailed above, I recommend that: (1) Amatucci's motion to amend (doc. no. 5) should be granted; (2) her motion to take notice (doc. no. 13) should be granted, to the extent described in note 2; (3) her complaint should be

dismissed with prejudice; and (4) the remaining three motions (doc. nos. 6, 9, and 10) should all be denied as moot, in light of my recommended dismissal of Amatucci's claims against Varney.

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                    _____

                                    Landya McCafferty
                                    United States Magistrate Judge

May 21, 2013

cc:  Josephine Amatucci, pro se
     Nancy J. Smith, Esq.